May it please the Court, Ronald Kaye appearing on behalf of Ms. Elizabeth Madrigal-Appellant in this matter. Good morning. Good morning, Your Honors. Your Honor, I would ask the Court of the opportunity to reserve two minutes for rebuttal. Your Honors, in this case, there was no admission as to loss by Ms. Madrigal. The District Court was using a variety of options for loss, but it never focused on a particular analysis for loss. First, the District Court stated after it read the indictment in open court that the amount of loss could be as high as $4 million. This was contrary to the factual basis that ultimately was agreed to by the parties. This was never admitted whatsoever by the Appellant. Counsel? Yes, Your Honor. Counsel, I may agree with you that the District Court was wrong in stating that there was an agreement in the plea agreement, but I guess what we're talking about is money loss. Now, the government has made a calculation, and I think that it would be appropriate for you to tell us why that is wrong and whether we can consider loss beyond the eight that she pled to. I think those would be kind of the critical things for you to talk about. Thank you, Your Honor. Well, first, with regard to the $1,207,000 that the government ultimately agreed to, we contested that at the sentencing. Ms. Madrigal presented substantial information with regard to set-off, and it ultimately came to a figure of $739,000 if we looked at the entire gamut of properties, or as low as $267,000 if we only looked at the eight properties that were pleaded in the original indictment. So the record is clear that the Appellant never accepted, and we were always to why the court, in fact, based on the state of the law of Blakely at the time of the sentencing, the court should be limited to the eight properties that were admitted in the indictment. And those properties would – Let me ask, counsel, because I know it's kind of hard for you to know when I'm asking a question. Ordinarily, the court in sentencing can look at surrounding circumstances in determining the sentence. Does that apply to dollar amounts for restitution? Not under the state of the law at the time of the sentencing. At the time of the sentencing, they needed to provide an admission or a finding beyond reasonable doubt as to what the amount of loss would be. The court – Well, let me – obviously, the court didn't say, do you admit this? But there was a lot that was going on. Your client was sitting there, and I didn't hear any denial. I mean, if you look to the totality of the circumstances, why is it clear error? Clear error, Your Honor, is because the court – It seems to me that there's two ways that you can look at this. And if we're analyzing it for clear error, there was a lot of discussion. Your client was – there was some indication that there would be some discussion over the loss. But I think that there's one way that you could look at it, that she was agreeing to a $1,207,000 loss. Your Honor, she contested the $1,207,000. The only reference to the $1,207,000 was in a equivocal estimation of what potential restitution would be. She always reserved the right to challenge that later in sentencing. And in fact, the district court himself stated that the amount of loss would ultimately be determined at sentencing. The district court was clearly erroneous. The district court came up with a variety of ways of trying to assess loss. They first said, well, let's count up all the possible loss that's referred to in the indictment, $4 million. There was no analysis there. The plea agreements – okay, let me – let's – all right, there's a detailed negotiated plea agreement that's assigned by your client and lawyer. Then the district court read the specific charges to the defendant in open court, and the defendant admitted to the charges, including the amount of fraudulent loans, which was $4 million, right? That's correct. And then here the plea agreement stated that the parties agreed that the amount of restitution was $1,205.804, unless the amount changed based on facts that subsequently arose. Which in fact was done at sentencing. The appellant provided substantial information, substantial itemized economic analysis of why that approach was incorrect, reserved the right to do it in the plea agreement, and there was no meeting of the minds whatsoever. For the district court to embrace the restitution amount, and for the government to do that at this point, would be contrary to the canons of contract law. What essentially was agreed to is that at this juncture the parties believed that $1,205,000 was approximately the loss but we reserved the amount to challenge that at a later date, which actually was done. Counsel, you just said a moment ago that the district court did not make, quote, made no analysis, end quote. What precisely do you feel that the district court should have done in order to make what you would consider to be the proper analysis? My review of the record indicates that there was over 50 pages of colloquy that went on. The district court judge went through the different loss amounts, actually calculated on the bench with a calculator potential amounts of loss in front of everyone. How is that not to be considered an analysis from the purposes of reviewing under clear air standard at this point? Well, the analysis with regard to the calculator is what the district court did is it took the eight properties referred to in the indictment, took his calculator and added them up and said this could be the potential loss. This is absolutely contrary to 9-11. Well, it was more than just simply adding up and deducting them, correct? It had to be much more extensive. We provided an alternative analysis as to what the loss would be. The district court provided no sense on the record that it would, that it closely examined our presentation or even closely examined the government's. What the district court said is, well, we have $4 million listed in the indictment. I can add the number of properties and that adds up to $1,500,000 or I can accept the government's calculation of loss. There was no independent review going on by the district court other than in all due respect to the district court, the ludicrous adding up of the properties in the indictment by calculator. This, even the government in its pleadings and its sentencing never embraced that analysis. What the district court needed to do was in detail look at what the potential set-offs would be in this case, what the loss would be. And the government admitted that in its presentation of $1,207,000. All right. I think you're at your little less than two-minute mark. Do you want to reserve the rest? Yes, Your Honor. All right. Thank you. Good morning. Stephanie McCaffrey on behalf of the United States. Good morning. First, to address Judge Fletcher's question with respect to the amount of loss that the district court considered, the district court considered the 28 properties, which would be an additional 20 properties on top of the charged properties in the indictment, finding those to be relevant conduct, and the district court had every right to do so under the guidelines. And the district court based its finding on an analysis of the PSR. The probation officer in the PSR evaluated the properties and found that the 28 properties that were included in the loss calculation in the PSR were relevant conduct because based upon Ms. Madrigal, the defendant's direct and specifically identified involvement in numerous fraudulent sales, the fact that the co-defendant, Ms. Madrigal's husband, was the seller of each of those properties and all the properties went into foreclosure, which caused a loss to HUD, and falsified that information was found in each of the loans for those properties. The probation officer found that to be relevant conduct because that is the same course in conduct as the eight properties charged in the indictment. With respect to the actual loss that the district court relied on, the district court relied on the government's figure of $1,207,000. The government's calculation was the same as the probation officer's calculation, except the government's calculation took out taxes, sales and maintenance expenses and took out four properties that it was pointed out to the government the Friday before sentencing that the government did not provide those four property files to the defendant. So the government at sentencing adjusted its loss calculation, making it more favorable to the defendant. Now, with respect to the district court — What's your position about what she admitted? With respect to what she admitted, the defendant is correct that the government is not relying on the defendant's admissions at the change of plea or in the plea agreement. The district court was doing an evaluation of her admissions during the plea agreement in anticipation of the potential that Blakely would apply to the sentencing guidelines. Meanwhile, what the district court has to do post-Booker in evaluating loss calculations is to rely on judicial findings for guideline application, and that's pursuant to Fan-Fan and Ameling. In Ameling, this Court held that the appropriate burden of proof for a guideline calculation or a guideline issue is the preponderance of the evidence. It referred to United States v. Howard, which set that standard. It is not proof beyond a reasonable doubt. And the government not only — the government established the loss amount by a preponderance of the evidence, ignoring the defendant's admissions in the plea agreement or at the change of plea. The government argued that the loss amount was — was based on relevant conduct, based on the fraudulent nature of each loan transaction in the — in the 24, 28 properties, and the probation officer agreed with that. The district court found that the loss, after evaluating the defense position regarding loss, the PSR, the government's position of loss, the government's revised position on loss, the district court stated that it evaluated all of those documents. Well, counsel for appellant seems to indicate that the district court just didn't do anything but just accept, you know, just get a calculator out and add things up and just accept what you said or whatever, that there wasn't an evaluation. The district court stated on the record that the loss calculations had been provided for months, that it reviewed every single one of the government's and the defense counsel's finding, the PSR, which had three different addendums to the PSR. This was a significant papered sentencing, and the district court stated that it reviewed every single one of those papers before making its finding. And, in fact, the district court engaged in analysis. It didn't just rely on what it found to be the potential intended loss of $4 million or approximately $1.5 million. The district court noted that in the — in the sentencing guidelines that the — any offset by the collateral, which the government's calculations did and the PSR did, the district court did not simply adopt the government's calculations wholeheartedly without engaging in any type of analysis. And that is clear from the sentencing policy. Counsel? Yes, Your Honor. Counsel, what is the difference between the method of calculation if we disregard the fact — the 8 versus the 24? The defense says there were certain other items which should have been deducted because of late fees that were paid in and various other miscellaneous amounts that had been received. How do you respond to that? Your Honor, with respect to — I can take some of the defendant's arguments in its position of loss in turn, if that's what the court would request. Yes. With — one of the arguments that the defendant made in its position regarding sentencing is that no foreclosure costs should be included. And that is simply incorrect. With respect to HUD-insured properties, what happens is HUD is an insurer of the loan. It's just like any other type of auto insurance or home insurance. And HUD is out. When a lender, when a borrower forecloses on a loan and makes a claim to HUD, HUD has to pay the outstanding loan balance and the foreclosure costs. These are not costs that are able to be controlled by HUD. It is part of the HUD insurance on the loan. Well, I agree with you on that. But there were some other items that the defendant was claiming were recovered, late costs and that kind of thing. Should those be taken into account? The government's position is no, Your Honor. And simply to make sure that the record is clear, the defendant — some of the credits that the defendant argues for is a credit for the mortgage insurance premium. And the mortgage insurance premium should not be credited to the defendant. A mortgage insurance premium is simply an insurance premium. It is like any other type of insurance. HUD has to — HUD incurs costs in providing FHA-insured loans so that people with modest incomes can afford houses. And some of the costs are paid by the mortgage insurance premium. The defendant should not get a credit for the payment of the mortgage insurance premium. Similarly, the defendant argues for a credit for deposits on canceled sales, a credit for extension fees. Again, Your Honor, these are costs that have to be incurred by HUD in the process of selling. HUD is not in the business of selling property. HUD has to take possession and sell properties when a borrower defaults on a loan. And in this case, HUD had to take possession of these properties because the defendant engaged in fraud and the borrowers were not qualified for the loans and defaults occurred. So the government's position is — I'm sorry, Your Honor. One other claim that they make is that some of the properties were sold not at market value but at assessed value to certain groups. Is there any validity to that? If you — if the Court were to look closely at the defendant's argument, there are With respect to the government's loss calculation that the Court adopted, the government doesn't subtract the 50 percent price. It subtracts the 100 percent price. So there's no harm done there. And the 100 percent price is based on the appraised value. The government does not believe that the defendant should be able to come back in hindsight and say, well, this was the market value, this is what HUD should have sold the property for. Instead, what HUD is basing its loss amount on is the appraised value, an appraisal that was done when HUD took possession of the property. And the government believes that that would be a more accurate reflection of the amount to offset the losses with. Well, so, I mean, essentially they're taking the — HUD is taking the position that they're not going to be micromanaged by someone in terms of what they have to do after that when they're left holding the bag. Correct, Your Honor. I do have a question in terms of if the panel were to find that there was an admitted loss of not less than $1.2 million or $207,000, whatever, is there any need to remand under Booker? No, Your Honor. There is no need to remand — have an amyling remand. Using the words of amyling, it is possible from this — in this case to reliably determine from the record whether the sentence imposed would have been materially different. Had the district court known the guidelines were advisory. The district court gave an alternate sentence of this case of 40 months and specifically stated that that would be his sentence in the event the federal sentencing guidelines are determined to be constitutionally invalid. And as the Sixth Circuit in the United States v. Christopher found, in that type of language, using the language used by the district court, the district court would actually have more discretion to depart downward in the absence of the guidelines than it would in the context of the advisory guideline system. But even — even given the extra discretion, the district court actually did bind itself or find the guidelines to be advisory and stated as such on the record, because the district court stated that in computing the alternate sentence, he looked at the guidelines so that the sentence is not a disparate sentence from within the factors enunciated in the guidelines. Unless any of the panel members have any questions, your time has expired. Do either of the panel members have any additional questions? I have no further questions. All right. Thank you. Thank you. Your Honors, this Court is not the place to determine whether these setoffs were appropriate. This Court is not the place to determine about late fees and foreclosure fees where the record is absolutely devoid of any analysis by the district court. What this Court should do is remand the case to the district court for the court to make a finding of which analysis of loss is correct. Counsel, you've indicated just again that there was no analysis, but the last time you were here, you just said that it was an incorrect analysis. Did the district court make an analysis that you simply disagree with now? I think it's generous to say that adding the properties of the indictment constitute an analysis. I would argue this was not an analysis. But let's say if we disagree and we say that there was an analysis, then do we review it for clear error? You still review the factual findings for clear error. But with regard to remanding it based on Booker, the issue then is to determine whether the government has proved by a reasonable doubt whether there was harmless error. And we have preserved this record by raising the Blakeley issue in the district court. And the district court was tethered by the guidelines in this case. Well, except for what about what counsel for the appellee stated in terms of where the court did, you know, the court couldn't exactly anticipate what would happen. But the court did go into an alternate sentence analysis and said even if the guidelines are found to be unconstitutional, this would be my sentence. How do you respond to that? Your Honor, this alternate sentence was nothing more than a rubber stamp. There was no analysis of the 3553 factors. In fact, the district court went and felt that it could not truly analyze the issue of family responsibilities because it was hampered by guidelines and statutes reflecting the Feeney amendments and that this was a discouraged area for departure and that it used its discretion in that posture. But the reality is now, today, the district court had the ability under 3553 to look at the history and characteristics of the defendant. This was a short shrift in the district court sentencing. This was an individual who had four children. This was an individual who had an infinite home. The district court went and was working under a departure analysis, saying this was not extraordinary. Today, when the focus of the guidelines is but one factor and all the other 3553 factors should be considered equally, the district court may come back and review it in a different light, because today the guidelines should not be constrained. The alternate sentence in this case was not that they should not be considered.  Right. It should not be considered as having more weight than the other factors. All right. Your time has expired. I want to thank both counsel for your excellent argument, and the matter will stand submitted. Thank you, Your Honor. Thank you. The next case on calendar is the United States of America v. Satish Shetty, case number 0550011.
judges: B. Fletcher, Callahan, England